1
2
3
4
5              IN THE UNITED STATES DISTRICT COURT
6            FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8    BRADFORD O. BRYANT,                 No. C 07-1845 JSW (PR)

9              Petitioner,              **ORDER DENYING PETITION
                                        FOR WRIT OF HABEAS
10     vs.                              CORPUS AND DENYING
                                        CERTIFICATE OF
11   BEN CURRY, Warden,                 APPEALABILITY**

12             Respondent.
                            _____/
13

14          Petitioner, a prisoner of the State of California, has filed a habeas corpus petition

15   challenging a parole denial.  This Court ordered Respondent to show cause why a writ

16   should not issue.  After Respondent had answered and Petitioner had filed a traverse, the

17   United States District Court for the Ninth Circuit decided *Hayward v. Marshall*, 603

18   F.3d 546 (9th Cir. 2010) (en banc), in which a number of important issues involving

19   parole habeas cases had been raised.  In consequence, the Court ordered the parities to

20   provide supplemental briefs addressing the impact of *Hayward* on this case, which they

21   have done.  For the reasons stated below, the petition is denied on the merits.

22                              **BACKGROUND**

23          Petitioner pleaded guilty in San Diego County Superior Court to second degree

24   murder.  On April 24, 1980, he was sentenced to a prison term of fifteen years to life.

25   This petition is directed to a denial of parole on January 25, 2005.  He exhausted these

26   claims by presenting them to the highest state court available, the California Supreme

27   Court, in a state habeas petition.

28   ///

*United States District Court*
*For the Northern District of California*

**DISCUSSION**

**I.      Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the Petitioner is not challenging his underlying state court conviction." *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this Court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d). Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id.* at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

**II.     Respondent's Claims**

In order to preserve the issues for appeal, Respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process

United States District Court

For the Northern District of California

protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence.  Because these contentions are contrary to Ninth Circuit law, they are without merit.  *See Pirtle v. California Bd. of Prison Terms*, 2010 WL 2732888 at * 4 (9th Cir. July 12, 2010); *Cooke v. Solis*, 606 F.3d 1206, 1213-14 (9th Cir. 2010) (citing *Hayward*, 603 F.3d at 555, 561-64); *Pearson v. Muntz*, 606 F.3d 606, 610-11 (9th Cir. 2010) (citing *Hayward*, 603 F.3d at 561-64).

### III.   Petitioner's Claims

As grounds for federal habeas relief, Petitioner asserts that: (1) the Board of Prison Terms' denial of parole was a violation of his plea agreement; (2) the Board's decision was not supported by some evidence; (3) the Board violated his due process rights by denying parole eleven times based on the circumstances of his offense; (4) the regulations governing parole are unconstitutionally vague; (5) his rights under *Apprendi*[1] and progeny were violated; (6) the Board's consideration of letters opposing parole violated his rights under the Ex Post Facto Clause; (7) The Board's consideration of opposition to parole by the prosecutor's office violated the plea agreement; (8) the Board did not provide a written decision sufficient to allow review, a violation of due process; (9) the Board's denial of parole was breach of the implied covenant of good faith and fair dealing contained in the plea agreement; and (10) he has a federal liberty interest in parole.

### A.   Breach of Plea Agreement

Petitioner contends that by denying him parole the Board has breached his plea bargain.  In a document filed with the superior court headed "Change of Plea (Guilty)," Petitioner stated that he understood the maximum possible punishment to be "15 years to life (parole after 10 years with credit under law for time served in the County Jail since his arrest."  (Pet., Ex. A.)  At the time of the 2005 parole hearing at issue here, Petitioner had served twenty-five years.

---

[1] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

United States District Court

For the Northern District of California

### 1.   Procedural Grounds

Respondent asserts not only that the claim lacks merit, but that it is procedurally defaulted, successive, and untimely.

### a.  Procedural Default

Petitioner raised this claim in state habeas petitions directed to the denial of parole at issue here.  The superior court denied the claim because it had been rejected previously.  (Ex. 8 at 9-10.)  The California Court of Appeal denied it on the same grounds, saying "[t]his argument was raised and rejected in the prior petition and will not be readdressed."  (Ex. 10 at 1.)  The California Supreme Court denied the habeas petition without comment or citation of authority.  (Ex. 12.)  Respondent contends that the claim is procedurally defaulted.

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  *Id.* at 750.  When the highest state court available has denied the state habeas petition without comment, as here, the federal court considering a procedural default claim must "look through" that decision to the last reasoned decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).

Respondent contends that the state courts' rejection of this claim as duplicative is a procedural bar to pursuing it here, citing *In re Lynch*, 8 Cal. 3d 410 (1972), and *In re Miller,* 17 Cal. 2d 734 (1941).  In *Lynch*, the court said: "petitioner contends his prior conviction of indecent exposure in 1958 was invalid because he was assertedly denied various constitutional rights at that proceeding. This contention, however, has been

United States District Court

For the Northern District of California

1   raised in several prior applications for habeas corpus by petitioner, each of which we

2   have denied. Accordingly, it does not require our reconsideration. ( *In re Miller* (1941)

3   17 Cal.2d 734, 735 [112 P.2d 10].)." *Lynch*, 8 Cal. 3d at 439 n.26.  In *Miller*, the court

4   said: "[a] prior petition for a writ of habeas corpus was filed in this court by this

5   petitioner on May 22, 1936, and was based on the same grounds set forth in the present

6   petition. The prior petition was denied on May 25, 1936, and since that time no change

7   in the facts or the law substantially affecting the rights of the petitioner has been

8   disclosed." *Miller*, 17 Cal. 2d at 735.

9        The Ninth Circuit has held that *Miller* means only that the claim is being denied

10   in the second petition on the same grounds as it was denied on in the first one – which is

11   not the same thing as invoking a procedural bar. *See Kim v. Villalobos*, 799 F.2d 1317,

12   1319 n.1 (1986).  Instead, the court must "look through" the ruling based on *Miller* and

13   treat it as being based on the same rationale as the prior ruling. *See Ylst*, 501 U.S. at at

14   804 n.3 (state court decision "based on ineligibility for further state review" has no effect

15   on availability of federal habeas; court should look through the later decision to the last

16   reasoned state court opinion); *Karis v. Vasquez*, 828 F.Supp. 1449, 1457 (C.D. Cal.

17   1993) (applying *Ylst* to a state decision that cited *Miller*).

18        Respondent has failed to provide the earlier state decisions rejecting this claim.

19   The Court thus cannot determine whether a procedural bar was invoked.  Because the

20   burden of showing procedural default is on the Respondent, this failure of proof requires

21   rejection of his contention that the plea bargain claim is barred by procedural default.

22   *See Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003) (burden on state).

### b.        Statute of Limitations

24        Respondent contends that this claim is untimely because it was not filed within

25   one year of the date when Petitioner should have been paroled under his interpretation of

26   the plea agreement.

27        The statute of limitations provides:

28   (d)(1) A 1-year period of limitation shall apply to an application for a writ of

5

habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the one-year time limit.  *Id.* § 2244(d)(2).

The limitations period of Section 2244(d) applies to "all habeas petitions filed by persons in 'custody, pursuant to the judgment of a State court,' . . . even if the petition challenges a pertinent administrative decision rather than a state court judgment." *Shelby v. Bartlett*, 391 F.3d 1061, 1063 (9th Cir. 2004).  Because Petitioner is in custody as a result of a state court judgment, the statute of limitations as provided in Section 2244(d) therefore is applicable to him.  For claims that the state breached a plea agreement such as Petitioner raises here, the limitations period begins running on the date the petitioner learned of the breach.  *See Burns v. California,* 2009 WL 2381423 at *3 (C.D. Cal. 2009) (limitations period began running on the date of the breach)[2];

---

[2] In *Burns* the court characterized the limitations period as starting "on the date the inmate claims the state breached the plea agreement."  2009 WL 2381423 at *3.  The court cited *Murphy v. Espinoza*, 401 F.Supp.2d 1048, 1052 (C.D. Cal. 2005), in support of that proposition, describing *Murphy*'s holding as "(statute of limitations begins to run on date petitioner claimed State breached plea agreement)."  *Burns*, 2009 WL 2381423 at *3.  In fact, however, *Murphy* treated the limitations period as starting when the petitioner knew, or should have known, there had been a breach, and did not say that it started on the date of breach.  *Murphy*, 401 F.Supp.2d at 1052.  Furthermore, even in *Burns* itself the court applied the "knew or should have known"

*Crenshaw v. Tilton*, 2008 WL 878887 at *6 (S.D. Cal. 2008) (limitations period begins running on date prisoner knew or should have known there had been a breach); *Singleton v. Curry*, 2007 WL 1068227 at *2 (N.D. Cal. 2007) (limitations period for breach of plea bargain claim is determined under section 2244(d)(1)(D)); *Daniels v. Kane*, 2006 WL 1305209, *1 (N.D. Cal. 2006) (statute of limitations begins to run on "the date a petitioner knew or should have known that a breach occurred"); *Murphy v. Espinoza*, 401 F.Supp.2d 1048, 1052 (C.D. Cal. 2005) (statute of limitations begins to run on date petitioner became aware, or should have become aware, that the plea agreement had been breached).

Petitioner contends that his plea agreement provided that he would be paroled after ten years, with a credit of 162 days for time served prior to the plea.  (Pet., attachment at 8; Ex. A at (unnumbered) 1 (Change of Plea form); Ex. C at 8 (transcript of sentencing).)  He was sentenced on April 24, 1980.  (Ex. 1 (abstract of judgment) at 1.)  Thus, under his interpretation of the agreement, he should have been paroled no later than November 13, 1989 (ten years less 162 days), or if not then, at least when the next parole hearing was held after he had served ten years, which appears to have been the hearing on February 21, 1990.  (Pet., Ex. L (decision effective April 2, 1990).)  In short, no later than February 21, 1990, Petitioner knew or should have known that the purported plea agreement that he would be paroled after ten years had been breached. The one-year limitations period thus ran out no later than February 21, 1991.  *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (adopting "anniversary method" for calculating § 2254 limitations period; absent tolling, expiration date of limitation period expires on same date as triggering event but in following year).  This claim was not filed until April 3, 2007, so it is barred by the statute of limitations.

///

---

standard, despite having recited the "date of breach" standard earlier in the ruling. *Burns*, 2009 WL 2381423 at *3.  This court therefore concludes that *Murphy* and *Burns* are in fact authority for the proposition that the correct trigger date is when the petitioner knew or should have known of the breach.

### c.    Successive

Respondent also contends that this claim is successive, and so must be dismissed. *See* 28 U.S.C. § 2244(b)(1) ("A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed."). Petitioner raised the same claim in an earlier federal habeas petition in this Court, *Bryant v. Kane*, No. C 05-0723 JSW (PR). That petition was denied in an order entered on December 13, 2007. That case is presently pending on appeal.

The earlier petition, C 05-0723 JSW (PR), was directed to Governor Gray Davis' February 21, 2003, reversal of a the parole board's grant of parole. The present petition is directed to a Board of Prison Terms' denial of parole on January 25, 2005. Petitioner contends that because this petition is directed to a different decision, it involves a different breach of the plea agreement, and the claim is not successive. The claims, however, are the same legally in both cases. That is, both depend on the rule that due process requires that a state perform the terms of a plea agreement, *see Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (en banc), and that the terms of the agreement are construed according to state contract law, *see Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987). And because the same plea agreement is involved in both claims, of course the applicable state contract law is the same. The only difference between the claims, in fact, is that the denial here was by the Board and in 2005 rather than by the governor and in 2003. This is a minor factual difference, and so is not sufficient to distinguish the two claims. *See Babbitt v. Woodford*, 177 F.3d 744, 746 (9th Cir. 1999) (claims are "successive" if "'the basis thrust or gravamen of the legal claim is the same;'" new factual allegations that do not change gravamen of legal claim do not prevent claim from being successive) (quoting *United States v. Allen*, 157 F.3d 661, 664 (9th Cir. 1998)). The claim must be dismissed as successive.

### 2.    Merits

Petitioner points to the "Change of Plea" document filed in the criminal case as evidence that the plea agreement called for him to be paroled after ten years. That

document is a declaration by Petitioner filed in the criminal case to support his motion to change his plea to guilty.  (Pet., Ex. A.)  It contains a series of declarations acknowledging, for instance, that he understands the nature of the charges against him and that his attorney has explained his rights.  He has initialed each statement. Paragraph 10 reads:  "[Petitioner] . . . does declare: . . . 10.  That his attorney has explained the possible sentence and understands the maximum possible punishment to be: <u>15 years to life (parole after 10 years with credit under law for time served in the County Jail since his arrest)</u>[] and further that in the event he is sentenced to State Prison, he will be placed on parole for a period of <u>up to 7 yrs.</u>"[3]  (*Id.*)

Paragraph 12 of the same document reads:  "12.  That he has not been induced to plead guilty by any promise or representation of a lesser sentence, probation, reward, immunity, or anything else.  If defendant's plea of guilty is the result of discussions with the District Attorney (e.g., that the District Attorney has agreed to move to dismiss a count if defendant pleads guilty to another count), explain briefly such promise or plea bargaining, in the following space:  <u>Defendant to be charged with no other offense arising out of this case.</u>"  (*Id.*)

The document is signed by Petitioner.  It carries the signatures of defense counsel and the prosecutor, and at the end, an order signed by the court granting the motion to withdraw the not guilty plea.  (*Id.*)

The key part of the document is, of course, paragraph ten, with its reference to "15 years to life (parole after 10 years . . . .)"  Petitioner treats this as a promise that he will be paroled after ten years, but strictly speaking, it is only a statement by Petitioner of what he *understands* in deciding to change his plea – that the maximum sentence would be fifteen years to life with parole "after" ten years.

There are two related points to be made here.  One is that "after" is not the same thing as "will be paroled when he has served ten years," in that "after" includes all time

_____

[3] The underlining in the quotation indicates typed insertions; the remainder is form language.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

subsequent.  That is, the purpose of the parenthetical phrase might have been to ensure that Petitioner knew he would have to serve at least ten years.  That other point is that paragraph ten is a description of what Petitioner understands the maximum punishment to be; it describes his understanding, not the promise by the prosecutor.[4]  Admittedly, if it were interpreted to mean that Petitioner's understanding of the maximum included guaranteed parole in ten years, rather than that he would have to serve at least ten years, his understanding of the maximum possible punishment would have been wrong, and Petitioner might have been able to use that as a basis for claiming that the plea itself was not voluntary and intelligent.  But that is not what is at issue here; the only relevant point here, where the claim is breach of a plea agreement, is whether the paragraph constitutes a promise that Petitioner would be paroled in ten years.

For the reasons discussed above, it is would be perfectly reasonable to interpret paragraph ten as something other than a promise, so it was not unreasonable for the state courts to reject this claim.  This claim is not only procedurally barred, but because the state courts' decisions were reasonable, habeas relief cannot be granted on the merits. *See* 28 U.S.C. § 2254(d)(1) (federal habeas relief can be granted only if state court decisions were contrary to, or unreasonable applications of, clearly established United States Supreme Court authority).

**B.    "Some Evidence" Claim**

Petitioner contends that denial of parole was not supported by "some evidence" and thus violated his due process rights.

**1.    Impact of *Hayward***

In his supplemental brief, Respondent contends that *Hayward* "dramatically changes a federal court's review of a state court decision upholding the denial of parole to a California inmate."  (Resp. Supp. Br. at 2.)  Subsequent to the filing of the brief,

---

[4] This is confirmed by paragraph twelve, in which he says that the only promise that has been made to him is that he will not be charged with any other crimes "arising out of this case."

**United States District Court**
For the Northern District of California

1    however, this was proved wrong.

2         *Hayward* did hold that there is no constitutional right to "release on parole, or to

3    release in the absence of some evidence of future dangerousness," arising directly from

4    the Due Process Clause of the federal constitution; instead, any such right "has to arise

5    from substantive state law creating a right to release." *Hayward*, 603 F.3d at 555.  The

6    court overruled *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003); *Sass v. California Bd. of

7    Prison Terms*, 461 F.3d 1123 (9th Cir. 2006); and *Irons v. Carey*, 505 F.3d 846 (9th Cir.

8    2007), "to the extent they might be read to imply that there is a federal constitutional

9    right regardless of whether state law entitles the prisoner to release . . . ." *Hayward*, 603

10   F.3d at 556.  All three of those cases had discussed the "some evidence" requirement, but

11   in all three it was clear that the requirement stemmed from a liberty interest created by

12   state law; that portion of the cases, therefore, was not overruled by *Hayward*.  *See Biggs*,

13   334 F.3d at 914-15; *Sass*, 461 F.3d at 1127-19; *Irons*, 505 F.3d at 850-51; *see also

14   Cooke v. Solis*, 606 F.3d 1206, 1213-14 (9th Cir. 2010) (post-*Hayward* case; noting that

15   California law gives rise to a liberty interest in parole).  However, all three also

16   contained references in dictum to the possibility that "[a] continued reliance in the future

17   on an unchanging factor, the circumstances of the offense and conduct prior to

18   imprisonment, [would] run[] contrary to the rehabilitation goals espoused by the prison

19   system and could result in a due process violation." *Biggs*, 334 F.3d at 916-17; *see also

20   Sass*, 461 F.3d at 1129; *Irons*, 505 F.3d at 853-54.  It appears that this possibility –

21   referred to below as a *Biggs* claim – is the only thing that was "overruled" by *Hayward*.

22        Aside from making clear that there could be no *"Biggs* claim" arising directly

23   from the Due Process Clause of the Constitution, it appears that *Hayward* has had no

24   significant impact on federal habeas review of California parole decisions.  The Ninth

25   Circuit still recognizes that California law gives rise to a liberty interest in parole.  *Pirtle*,

26   2010 WL 2732888 at * 4; *Cooke,* 606 F.3d at 1213-14; *Pearson,* 606 F.3d at 610-11.

27   Under California law, "some evidence" of current dangerousness is required in order to

28   deny parole.  *Hayward*, 603 F.3d at 562 (citing *In re Lawrence*, 44 Cal.4th 1181, 1205-

United States District Court

For the Northern District of California

06 (2008), and *In re Shaputis*, 44 Cal.4th 1241 (2008)).  "California's 'some evidence'

requirement is a component of the liberty interest created by the parole system of that

state."  *Cooke*, 606 F.3d at 1213.  A federal court considering a "some evidence" claim

directed to a parole denial thus must determine whether there was "some evidence" of

current dangerousness to support the parole board's decision; if not, the prisoner's due

process rights were violated.  This was also true prior to *Hayward*, although now the

rationale is that the Court is applying California's "some evidence" rule as a component

of the required federal due process.

In short, Ninth Circuit decisions after *Hayward* have essentially returned things to

the way they were before *Hayward*.  *See Pirtle*, 2010 WL 2732888 at *4; *Cooke*, 606

F.3d at 1213-14; *Pearson*, 606 F.3d at 610-11.  Respondent's arguments that *Hayward*

has transformed the legal landscape are rejected.

### 2.    Analysis

A federal district court reviewing a California parole decision "must determine

'whether the California judicial decision approving the governor's [or the Board's]

decision rejecting parole was an 'unreasonable application' of the California 'some

evidence' requirement, or was 'based on an unreasonable determination of the facts in

light of the evidence.'"  *Hayward*, 603 F.3d at 562-63 (quoting 28 U.S.C. §

2254(d)(1)-(2)).  That requirement was summarized in *Hayward* as follows:

> [a]s a matter of California law, 'the paramount consideration for both the
> Board and the Governor under the governing statutes is whether the inmate
> currently poses a threat to public safety.'  There must be 'some evidence'
> of such a threat, and an aggravated offense 'does not, in every case,
> provide evidence that the inmate is a current threat to public safety.'  The
> prisoner's aggravated offense does not establish current dangerousness
> 'unless the record also establishes that something in the prisoner's pre- or
> post- incarceration history, or his or her current demeanor and mental state'
> supports the inference of dangerousness.  Thus, in California, the offense
> of conviction may be considered, but the consideration must address the
> determining factor, 'a current threat to public safety.'

*Id.* at 562 (quoting *Lawrence*, 44 Cal. 4th. at 1191, 1209-15); *see also Cooke*, 606 F.3d at

1214 (describing California's "some evidence" requirement).

When a federal court considers a habeas case directed to a parole decision, the

"necessary subsidiary findings" and the "ultimate 'some evidence' findings" by the state

courts are factual findings – and thus are reviewed by the federal court under 28 U.S.C. §

2254(d)(2) for whether the decision was "based on an unreasonable determination of the

facts in light of the evidence." *Id.* (citing *Hayward*, 603 F.3d at 563).

The nature of the offense was one basis for the Board's conclusion that Petitioner

would be a danger to society if paroled.  The Board set out the facts of the offense,

which Petitioner did not dispute:

> On 11-13 of 1979 at approximately six a.m. Daryl Kohlstaddt, . . . left his home in Spring Valley California on his way to work at the 32nd Naval Station. His wife, Beverly Kohlstaddt, heard a commotion outside and within a few minutes the doorbell rang and her ex-husband, Bradford Bryant, was standing at the door.  He stated that he had been in an accident and asked to use her bathroom.  She heard him washing up and then he left.
>
> A neighbor living directly across the street had observed a fistfight in front of the Kohlstaddt home and called the sheriff's office.  Deputies arrived and spoke with Ms. Kohlstaddt regarding the fight and then left.  later, Ms. Kohlstaddt noticed that her husband's car was still parked in front of the house.  She called his place of employment and learned that he had not reported to work.  At about 12 noon she discovered her husband's body alongside the house.  Cause of death was determined to be cerebral lacerations and hemorrhages, left hemothorax due to skull fractures, multiple stab wounds through the chest and back.

(Ex. 2 at 20-21.)

At the time of the hearing in 2005 Petitioner was approximately fifty-five years

old and had served a bit more than twenty-five years on his sentence of fifteen years to

life.  This significant passage of time certainly reduces the evidentiary value of the

offense itself, but the Court concludes that the circumstances of the offense still are

entitled to some weight; whether they would be enough in themselves to constitute

"some evidence" need not be resolved, because the denial also is supported by other

evidence.  There was evidence before the Board that Petitioner had failed to participate

in sufficient self-help programs, in particular those helping prisoners deal with anger

issues (*id.* at 44-48, 75-78); did not have parole plans in California, where he would have

to be released initially (*id.* at 56-63); and had not completed vocational programs (*id.* at

42).  Importantly, the Board found that Petitioner's demeanor at the hearing was "very

angry," which combined with his lack of anger management programming and the out-

1  of-control violence of his crime, in itself is "some evidence" that he would be a danger to

2  society if released.  (76, 79-81.)

3       In light of this evidence, the state courts' applications of the California "some

4  evidence" requirement, and those courts' consequent rejections of the claim, were not

5  "based on an unreasonable determination of the facts in light of the evidence."  *See* 28

6  U.S.C. § 2254(d)(2).  This claim therefore cannot be the basis for federal habeas relief.

7  *See Cooke*, 606 F.3d at 1214 (federal habeas court considering California parole "some

8  evidence" claim must apply §  2254(d)(2)); *Hayward*, 603 F.3d at 562-63 (requiring

9  application of California's "some evidence" standard).

10      **C.**     *Biggs* **Claim**

11       Petitioner contends that the Board violated his due process rights by denying

12  parole eleven times based on the circumstances of his offense.

13       In  *Biggs*, the court said, in dictum, that "[a] continued reliance in the future on an

14  unchanging factor, the circumstances of the offense and conduct prior to imprisonment,

15  runs contrary to the rehabilitation goals espoused by the prison system and could result

16  in a due process violation."  334 F.3d at 917.  As discussed above, the court in *Hayward*

17  overruled any implication that such a claim might be viable.  *Hayward*, 603 F.3d at 556.

18  This claim therefore is without merit.

19      **D.**     **Vague Regulation**

20       The main ground upon which the Board based its conclusion that Petitioner would

21  be a danger to society if released was that:

22       [t]he offense was carried out in an extremely cruel and extremely
    callous manner.  The victim was abused, defiled, and mutilated during the

23      offense by being staffed multiple times in a very violent manner and then
    having a 40-pound rock thrown on his face smashing it flat.  The motive for

24      the crime was extremely trivial in relation to the offense and that the ;prisoner
    went to his ex-wife's home to confront her husband and as the victim came

25      outside there was a struggle between the prisoner and the victim and the
    victim was stabbed multiple times and then his skull was crushed with a rock.

26      In fact with the multiple stabbing there was such force that the knife was
    broken off in the victim.

27  (Ex. 2 at 73-74.)

28

United States District Court

For the Northern District of California

Petitioner contends that in so holding the Board was applying Section 2402(c)(1) of Title 15 of the California Code of Regulations, which provides that a circumstance tending to show unsuitability for parole is that the crime was committed in "an especially heinous, atrocious or cruel manner."  15 Cal. Code Regs. § 2402(c)(1).[5]  He argues that

---

[5] The entire regulation reads:

§ 2402. Determination of Suitability.

(a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

(b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

(c) Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:

(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

(C) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which

---

15

demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

United States District Court

For the Northern District of California

1    this phrase is unconstitutionally vague.

2          The United States Supreme Court has not provided any guidance as to how a

3    vagueness challenge to a parole regulation should be analyzed, but as the Ninth Circuit

4    noted in *Hess v. Board of Parole and Post-Prison Supervision*, which did involve such a

5    challenge, the Supreme Court *has* held that a basic principle of due process is that a state

6    law must establish adequate guidelines to govern the exercise of discretion by state

7    officials, such that the law neither "authorizes [n]or even encourages arbitrary and

8    discriminatory enforcement."  *Hess*, 514 F.3d at 913 (quoting *Hill v. Colorado*, 530 U.S.

9    703, 732 (2000)).  In deciding how that rather general proposition should be applied to

10   parole regulations, the *Hess* court noted that "[t]he Due Process Clause does not require

11   the same precision in the drafting of parole release statutes as is required in the drafting

12   of penal laws," and concluded that in the absence of Supreme Court or Ninth Circuit

13   cases involving vagueness challenges to parole regulations, the Court's "jurisprudence

14   concerning vagueness challenges to sentencing statutes is informative . . . ."  *Id.*  The

15   court held:

16        Like parole release statutes, sentencing statutes guide decisions about how
          to impose punishments; they do not themselves define and penalize crimes.
17        When faced with vagueness challenges to statutes that govern the
          imposition of the death penalty, the Supreme Court has upheld the statutes
18        so long as they permitted a 'principled distinction between those who
          deserve the death penalty and those who do not,' and directed the exercise
19        of discretion in such a way as to 'minimize the risk of wholly arbitrary and

20   _____

21        (6) Lack of Criminal History. The prisoner lacks any significant
          history of violent crime.
22
          (7) Age. The prisoner's present age reduces the probability of
23        recidivism.

24        (8) Understanding and Plans for Future. The prisoner has
          made realistic plans for release or has developed
25        marketable skills that can be put to use upon release.

26        (9) Institutional Behavior. Institutional activities indicate
          an enhanced ability to function within the law upon
27        release.

28   15 Cal. Code Regs. § 2402(c)(1).

17

United States District Court

For the Northern District of California

1    capricious action.' *Lewis v. Jeffers*, 497 U.S. 764, 774-76 (1990) (internal
     quotation marks omitted).

2    *Hess*, 514 F.3d at 914.

3         This Court cannot grant habeas relief on a legal question unless the state courts'

4    rulings were contrary to, or an unreasonable applications of, "clearly established Federal

5    law, as determined by the Supreme Court of the United States."  *See* 28 U.S.C. §

6    2254(d)(1).  *Hess* makes clear that the only such clearly established law applicable to

7    parole regulations is the general proposition that state laws must contain "adequate

8    guidelines to govern the exercise of discretion by state officials, such that the law neither

9    "authorizes [n]or even encourages arbitrary and discriminatory enforcement." *Hess*, 514

10   F.3d at 913 (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)).  The standard *Hess*

11   adopted for parole regulations –  that the regulations must provide a "'principled

12   distinction between those who deserve [parole] and those who do not'" and direct the

13   exercise of discretion in such a way as to "'minimize the risk of wholly arbitrary and

14   capricious action'" –  is not a holding of the Supreme Court, and thus cannot be directly

15   applied here, but it is persuasive authority on the question whether a particular state court

16   holding is an "unreasonable application" of Supreme Court precedent or in assessing

17   what law is "clearly established."  *Clark v. Murphy*, 331 F.3d 1062, 1070-71 (9th Cir.

18   2003).

19        In *Arave v. Creech*, 507 U.S. 463 (1993), the Supreme Court considered an Idaho

20   death penalty statute that included as an aggravating factor that the crime was carried out

21   with an "utter disregard for human life."  *Id.* at 470-78.  It held that the phrase was not

22   impermissibly vague because a limiting construction had been adopted which defined the

23   factor as meaning those crimes demonstrating "the utmost disregard for human life, i.e.,

24   the cold-blooded pitiless slayer."  *Hess* makes clear that *Arave* is useful authority,

25   despite its being a sentencing case, in considering whether the state court decisions here

26   were unreasonable.

27        Here, the phrase to which Petitioner objects is followed in the regulation by  a list

28   of five factors for the Board to consider when determining whether a crime is especially

United States District Court

For the Northern District of California

"heinous, atrocious or cruel," including the presence of multiple victims, the abuse or mutilation of the victim and a trivial motive for the crime. *See* 15 Cal. Code Regs. § 2402(c)(1)(A)-(E). The five factors serve to limit the more general "heinous, atrocious or cruel" phrase sufficiently to prevent it from being unconstitutionally vague, just as did the judicial construction in *Arave*. Those factors provide the sort of guidelines to prevent arbitrary enforcement that the court in *Hess* recognized are required by Supreme Court authority to avoid a due process problem. It thus was not unreasonable for the state courts to reject this claim.

   **E.   *Apprendi* Claim**

   Petitioner claims that the Board's action violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *Cunningham v. California*, 127 S. Ct. 856 (2007).

   The rule from *Apprendi* and its progeny is that, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence [than the statutory maximum] must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Cunningham v. California*, 127 S. Ct. 856, 863-64 (2007). The relevant statutory maximum "'is not the maximum sentence a judge may impose after finding additional fact, but the maximum he may impose *without* any additional findings.'" *Id.* at 860 (quoting *Blakely v. Washington*, 542 U.S. 296 303-04 (2004)).

   The *Blakely* court explained that the *Apprendi* rationale does not apply to indeterminate sentencing within the permitted sentence range. *See Blakely*, 542 U.S. at 309 ("Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence – and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned."). That is, the heart of the analysis is whether the statutory scheme *requires* that a certain sentence be imposed

1    upon the finding of certain facts.

2         In California, for persons sentenced to a term of years to life, as petitioner was,

3    the sentence is a life sentence until he or she is found suitable for parole. *See*

4    *Dannenberg*, 34 Cal. 4th at 1083-84 ("an inmate whose offense was so serious as to

5    warrant, at the outset, a maximum term of life in prison, may be denied parole during

6    whatever time the Board deems required for 'this individual' by 'consideration of the

7    public safety.'" (quoting Cal. Penal Code § 3041(b) (emphasis in original)). And

8    although there are regulations applicable to the parole board's decision whether to find

9    an inmate suitable for parole, those regulations "are set forth as general guidelines; the

10   importance attached to any circumstance or combination of circumstances in a particular

11   case is left to the judgment of the panel." Cal. Code Regs., tit. 15, § 2402 (c), (d)). That

12   is, the regulations do not require a particular outcome when a particular fact or facts are

13   found, which is the required predicate for application of the *Apprendi/Blakely* rule.

14   Because Petitioner does not have a legal right to a lesser sentence when particular facts

15   are found, *see Blakely*, 542 U.S. at 309, the *Apprendi/Blakely* rule is inapplicable and

16   this claim is without merit.

17   **F.    Remaining Claims: Letters Opposing Parole, Prosecutor's Opposition, Written Decision, and Liberty Interest**

18

19        The issues the Court has labeled issues six through ten in the list on page three,

20   above, do not require extended discussion.   These are Petitioner's claims that the

21   Board's consideration of letters opposing parole violated his rights under the Ex Post

22   Facto Clause; the Board's consideration of opposition to parole by the prosecutor's

23   office violated the plea agreement; the Board did not provide a written decision

24   sufficient to allow review, a violation of due process; the Board's denial of parole was

25   breach of the implied covenant of good faith and fair dealing contained in the plea

26   agreement; and that he has a federal liberty interest in parole.

27   ///

28        **1.    Claim Six**

20

United States District Court

For the Northern District of California

In the heading for his "some evidence" issue, which is claim five in the petition, Petitioner asserts, in addition to the "some evidence" claim discussed above, that the Board's consideration of letters from the victim's family and from the district attorney violated his ex post facto rights. Because this issue is unrelated to the main "some evidence" issue, the Court has treated it as a separate issue and labeled it issue six. Petitioner does not refer to the ex post facto claim in his discussion of his claim five, but for no obvious reason there is some discussion of it in the argument in support of a later claim.

From Petitioner's brief discussion it appears that the ex post facto claim is based on his belief that the right of the public and the prosecutor to participate in the hearing was provided by statute in 1984, after he had committed the crime. Even if this were true, it would not be a violation of the Ex Post Facto Clause. *See California Dep't of Corrections v. Morales*, 514 U.S. 499, 509 (1995) (new state law that simply alters "'the method to be followed' in fixing parole release date under identical substantive standards" not Ex Post Facto violation); *Johnson v. Gomez*, 92 F.3d 964, 967 (9th Cir. 1996) (retroactive application of law that transfers final decision on parole from Board of Prison Terms to governor does not violate Ex Post Facto Clause). The same would be true of any letter of opposition from the prosecutor.

### 2. Claim Seven

In the heading for his claim five Petitioner also asserts that the Board's consideration of the prosecutor's opposition to parole violated his plea agreement, a claim the Court has labeled claim seven. Petitioner does not point to any provision in the plea agreement that the prosecutor would not oppose parole, and the record does not contain any such provision. This claim is without merit.

### 3. Claim Eight

Petitioner contends that the prosecutor's opposition to parole was a breach of the implied covenant of good faith and fair dealing that California law implies in every contract. In the absence of any agreement in the plea bargain that Petitioner would be

United States District Court

For the Northern District of California

1    paroled after ten years, as discussed above, there is nothing of bad faith or unfairness

2    about the prosecution's opposition to parole.

3              **4.      Claim Nine**

4              Petitioner also contends that the Board failed "to provide a written record that can

5    be reviewed by the court in a meaningful way as provided by due process."  (Pet. 35.)

6    There was a written decision, so it appears that Petitioner's real complaint is that it was

7    pro forma and thus not sufficient to allow meaningful review.

8              There is a federal requirement that the Board provide an explanation of the

9    reasons for denial, but no federal requirement that it be written or that it be sufficient to

10   allow effective review; the purpose of the requirement that reasons be given is so the

11   inmate will know in what ways he falls short, not to facilitate review.  *See Greenholtz v.*

12   *Nebraska*, 442 U.S. 1, 16 (1979).  In any case, the record is more than sufficient to allow

13   meaningful review.  This claim is without merit.

14             **5.      Claim Ten**

15             Finally, Petitioner contends that he has a liberty interest in parole.  This is true,

16   *see Pirtle*, 2010 WL 2732888 at * 4, but it is not in itself a ground for relief.

17   **IV.    Appealability**

18             The federal rules governing habeas cases brought by state prisoners have recently

19   been amended to require a district court that denies a habeas petition to grant or deny a

20   certificate of appealability in the ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases,

21   28 U.S.C. foll. § 2254 (effective December 1, 2009).

22             A petitioner may not appeal a final order in a federal habeas corpus proceeding

23   without first obtaining a certificate of appealability (formerly known as a certificate of

24   probable cause to appeal).  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A judge

25   shall grant a certificate of appealability "only if the applicant has made a substantial

26   showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate

27   must indicate which issues satisfy this standard.  *See id.* § 2253(c)(3).  "Where a district

28   court has rejected the constitutional claims on the merits, the showing required to satisfy

22

United States District Court

For the Northern District of California

§ 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000).

For the reasons set out above, jurists of reason would not find the result debatable or wrong.  A certificate of appealability will be denied.  Petitioner is advised that he may not appeal the denial of a COA, but he may ask the court of appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a), Rules Governing § 2254 Cases.

## CONCLUSION

The petition for a writ of habeas corpus is DENIED.  The Clerk shall close the file.

**IT IS SO ORDERED.**

DATED:  August 10, 2010

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\JSW\HC.07\Bryant1845.RUL.wpd

23

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

BRADFORD O. BRYANT,

        Plaintiff,

  v.

BEN CURRY et al,

        Defendant.

_____/

Case Number: CV07-01845 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 10, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Bradford O. Bryant
CTF
P.O. Box 689
C-16113
Soledad, CA 93960-0689

Dated: August 10, 2010

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk

**United States District Court**
For the Northern District of California